COMMONWEALTH vs. CHRISTOPHER RAY DOANE.

Essex. December 8, 1998. - January 11, 1999.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Homicide. Practice, Criminal,* Assistance of counsel, Juvenile delinquency proceeding. *Intent.*

An adjudication of delinquency by reason of murder in the first degree is not subject to direct entry of appeal and plenary review by the Supreme Judicial Court under the provisions of G. L. c. 278, § 33E. [631-632]

At the trial of a juvenile for murder in the first degree, trial counsel's concession in closing argument that the Commonwealth had proved second degree murder was a reasonable tactical decision in the face of an overwhelming case for delinquency. [633-634]

COMPLAINT received and sworn to in the Lynn Division of the District Court Department on April 18, 1994.

The case was tried before *Thomas A. Connors,* J.

*Steven J. Rappaport* for the defendant.

*Marcia H. Slingerland,* Assistant District Attorney (*George O'Connor,* Assistant District Attorney, with her) for the Commonwealth.

FRIED, J. Doane appeals from an adjudication of delinquency by reason of murder in the first degree. The jury specifically found both deliberate premeditation and extreme atrocity or cruelty. The direct entry of the appeal in this court was improper. General Laws c. 278, § 33E, allows for direct entry of an appeal in this court only in a case "in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree." An adjudication of delinquency, even though by reason of murder in the first degree, does not fit within this definition, nor does it receive the severe sanction of life imprisonment without possibility of parole, which is the reason for direct entry and plenary review of the record here under G. L. c. 278, § 33E. See *Commonwealth* v. *Kent K.,* 427 Mass. 754, 763 (1998). Today we

proceed to decide the case. In the future, we shall transfer such a case improperly entered in this court on discovery of the error, G. L. c. 211, § 4A, as it is jurisdictional.

Doane claims that he was denied effective assistance of counsel because his trial counsel's closing argument amounted to an abandonment of the only defense available to him. On review of the whole record, we conclude that counsel made a reasonable tactical decision in the face of an overwhelming case for delinquency by the prosecution. The judgment is affirmed.

It is sufficient to recount that Doane and some other men, who had been drinking malt liquor, went into a wood with a rifle and some bullets. The victim, with whom Doane believed he had cause to be angry, was in the group, and one of the witnesses testified that, as they were walking to the woods, Doane had said that he was going to shoot the victim. The members of the group took turns shooting at a tree. At some point, there was a shot and a scream, and the victim fell to his knees. The victim said that Doane had shot him. Doane then came closer to the victim and shot him again in the face, hit him over the head with the rifle butt with enough force to break the rifle, and dropped a rock on the back of the victim's head. Three witnesses testified to this same effect. The cause of death was multiple gunshot wounds and blunt force injuries to the head. One of the gunshot wounds was to the victim's thigh, and the other, below the left jaw, appeared to have been inflicted with the barrel of the gun pressed directly against the skin. Doane testified that he had been drinking and had taken three Xanax pills before the group went into the woods, and that he felt drunk and "pilled out." He testified that he had shot the victim at the direction of another member of the group. He admitted that he hit the victim with the rifle and dropped a rock on his head. This too, he suggested, was at the direction of another member of the group.

It is evident from the record that the defense strategy was to cast doubt on whether Doane's state of mind warranted the jury's finding that he had acted with deliberate premeditation or extreme atrocity or cruelty. He adduced testimony that Doane, who was sixteen years old at the time of the killing, had been drinking, had taken Xanax, and had acted under the influence and direction of one of the members of the group. Defense counsel asked for and received an instruction that the jury could take into account "evidence of the effects of Doane's consump-

tion of drugs in deciding whether the Commonwealth has met its — or alcohol — in determining whether the Commonwealth has met its burden of proving the defendant's state of mind beyond a reasonable doubt." Indeed, the judge repeated this point several times and in several contexts. Defense counsel also sought to cast doubt on the credibility of the eyewitnesses to the killing by suggesting that they had gotten together to concoct a version of events that would be most damaging to Doane and by bringing out that they had made arrangements for favorable treatment by the Commonwealth.

The only claim Doane makes now is that he was deprived of the effective assistance of counsel because, in his closing argument, defense counsel conceded that Doane was delinquent by reason of murder in the second degree but argued that he was not delinquent by reason of murder in the first degree. Doane claims that this was an abandonment of his defense that he was so incapacitated by alcohol and drugs that — in the words of the judge's instruction — he did not act with malice, that is, he neither intended to kill nor intended to cause grievous bodily harm, nor intended to do an act creating a plain and strong likelihood that death would follow. By arguing that Doane was delinquent by reason of murder in the second degree, defense counsel did, in effect, make that concession. What he did not concede, indeed what he strenuously argued against, is that Doane was delinquent by reason of murder in the first degree, which would require the jury to find that he had acted either with deliberate premeditation or with extreme atrocity or cruelty. On this point, he urged consideration not only of Doane's ingestion of drugs and alcohol but of his youth — he was sixteen years old at the time of the killing — and the sinister influence over him of one of the members of the group. It was that other person who was guilty of murder in the first degree, defense counsel argued in his closing, stressing that other person's privileged social background and his cool, calculating, and deliberative behavior throughout the events leading up to, during, and after the killing. Although the line distinguishing the mental state necessary for a finding of intentional killing from that necessary for a finding of deliberate premeditation and extreme atrocity or cruelty is a fine one to say the least, the law does make that distinction, and the law also requires that a trial judge must instruct on murder in the second degree whenever he instructs on murder in the first degree. See G. L. c. 265, § 1;

*Commonwealth* v. *Vinnie, ante* 161, 179 (1998), and cases cited. Given Doane's own testimony, and that of three eye witnesses, there was very little defense counsel could argue. He could very reasonably have concluded that the jury were simply going to be impervious to a claim that Doane was — in Doane's words — so "pilled out" as to be incapable of even that clarity of mind that satisfies the elements of malice. And so he grasped at the only straw at hand: that the law does require something more for a finding of murder in the first degree, and that the emphasis which he had laid on Doane's possible intoxication, the influence of one of the group's members on him, his relative youth, and the apparent injustice of prosecuting only him, and for murder in the first degree at that, might persuade the jury to acquit him of the more serious charge. There is, after all, a palpable difference in the penalties available for a finding of delinquency by reason of murder in the first degree and delinquency by reason of murder in the second degree.[1] Finally, defense counsel might reasonably have concluded that the best hope of procuring this not inconsiderable advantage for Doane was not to ask for too much, that conceding the inevitable was the best way perhaps to obtain all that seemed available.

We have reviewed the whole record and conclude that in no respect was Doane deprived of the effective assistance of counsel.

*Judgment affirmed.*

---

[1]At the time Doane committed the offense, 1994, the sentence to be imposed on a finding of delinquency by reason of murder in the second degree was a minimum of ten and a maximum of fifteen years' confinement. The penalty on a adjudication of delinquency by reason of murder in the first degree was a minimum of fifteen and a maximum of twenty years' confinement. See G. L. c. 119, § 72, as amended through St. 1992, c. 398, §§ 4, 5. The statutory provisions for these penalties were removed in 1996 by St. 1996, c. 200, §§ 13, 39. General Laws c. 119, § 72B, was enacted at the same time, St. 1996, c. 200, § 14, and provides that, where a person is found guilty of murder in the first or second degree after his fourteenth birthday, the Superior Court shall impose the penalty "provided by law." In the case of murder in the first degree, that sentence would be life imprisonment without possibility of parole. See G. L. c. 265, § 2. As to murder in the second degree, § 72B provides that the juvenile would be eligible for parole after fifteen years.